UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| WOMBLES CHARTERS, INC. and | ) | |
| BOBBY J. WOMBLES, SR., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 07-94-JMH |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| ORIX CREDIT ALLIANCE, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**       **       **       **       **

This matter is before the Court on Judgment Creditor Orix Credit Alliance's Motion to Enforce Judgment ("Orix") [Record No. 71] and cross Motions for Summary Judgment filed by Garnishees Chad R. Wadlington ("Wadlington") and Wombles and Wadlington, PSC (the "PSC") [Record No. 96] and Orix [Record No. 95].[1]  These matters are now ripe for review.

**I.  BACKGROUND**

This is a proceeding under KRS 425.526 in which Orix takes issue with the answers of Wadlington and the PSC to wage and non-wage garnishments Orix caused to be served on Wadlington and the PSC.  In 2000, Orix obtained a judgment against Plaintiff Bobby G. Wombles, Sr. ("Wombles") in the United States District Court for the Southern District of New York in the amount of $193,594.20.

---

[1]    Although styled as motions for summary judgment, in actuality, the motions are simple the court-ordered briefing on Orix's Motion to Enforce Judgment.

The judgment was domesticated in this Court.  Orix now claims that the amount due, including post-judgment interest, exceeds $377,000.00.  The matters currently ripe for review in this action concern the amount of fees, if any, Wombles is entitled to for work performed in the case of *Adams v. Comair, et al.,* 5:07cv339-KSF. It is Orix's position that the PSC is indebted to Wombles for work performed by Wombles, Chad Wadlington, and the PSC in the *Adams* case.

In August 2006, members of the Adams family, specifically, the Adams Estate, and her three adult children, entered into a series of contingent fee agreements whereby the PSC would represent them in the *Air Crash* litigation.  Neither Wadlington, individually, nor Wombles, is a party to the fee agreements with the members of the Adams family.  Also in August 2006, the PSC entered into a fee agreement with Wombles whereby, in return for one-third of any fees generated from the *Adams* litigation, Wombles would assist the PSC in its representation of the Adams family.  Wombles's time sheet indicate that he performed work on the *Adams* litigation from August 30, 2006, to May 17, 2007.[2]  Subsequent to Wombles ceasing to perform legal work in connection with the *Adams* litigation, the parties to the litigation reached a settlement.  The proceeds of the settlement are now being held in escrow.

On September 21, 2007, Orix, as a judgment creditor of Wombles, caused to be served on the PSC: an Order for Writ of

---

[2]   Wombles informed the PSC that he had been diagnosed with early-onset Alzheimer's disease and would be retiring from the practice of law.

(Wage) Garnishment [Record No. 45]; and Order for Writ of (Non-Wage) Garnishment [Record No. 46]; and a Writ of Execution [Record No. 48] (collectively, the "Garnishments").[3]  The PSC answered the Garnishments, stating that Wombles was not an employee of the PSC, and that the PSC was neither indebted to Wombles nor holding money belonging to Wombles.[4]

While Wombles is the father-in-law of Wadlington and the PSC shares both names, there is no evidence that Wombles had any ownership interest in the PSC.  Wombles and Wadlington have worked together on certain contingent fee matters, whereby pursuant to fee agreements between Wombles and the PSC, the "originating" attorney receives two-thirds of any fee and the "assisting" attorney receives one-third of any fee.  Wombles provided legal services in the *Adams* case pursuant to just such an agreement.

Orix, as a judgment creditor of Wombles, argues that Wombles is entitled to one-third of the total fee generated from the *Adams* case, less $64,750.00, the amount it concludes Wadlington should be compensated for work Wombles should have performed on the case, one-third of the time, but did not.  Wadlington argues that because

---

[3]  Orix argued that no fees had been earned at the time the September 2007 garnishments were issued because the settlement agreement was not signed until August 2008.  This argument is mooted by the fact that in October 2008, subsequent to the settlement of the *Adams* case, garnishment orders were again issued.

[4]  On September 17, 2008, the PSC filed a supplemental answer to the Garnishment order, stating that it was indebted to Wombles in the sum of $5,467,50 for legal services Wombles performed in the *Adams* litigation, but that Wombles was indebted to the PSC in the sum of $15,404.62 for expenses paid by the PSC in connection with certain other contingency fee cases.

he, individually, was not a party to the fee arrangement between the PSC and Wombles, he is not indebted to Wombles as to any fees earned in the *Adams* litigation, a point which Orix concedes. [Record No. 98 at 2].

The PSC argues that because the it undertook the *Adams* litigation on a contingent fee arrangement, the right to payment did not arise until the occurrence of the contingency - the signing of the settlement agreement.  Pointing out that Wombles had ceased to perform work on the *Adams* case long before the occurrence of the contingency, the signing of the settlement agreement in August 2008, the PSC takes the position that Wombles is entitled to no portion of the fees generated therefrom.

## II.  ANALYSIS

As Orix concedes that Wadlington, individually, is not indebted to Wombles, the only remaining issue is the amount, if any, the PSC owes Wombles in connection with the *Adams* litigation. Citing 7 Am. Jur. 2d, *Attorneys* § 264, and several state court cases out of Louisiana and Texas, the PSC argues that because Wombles voluntarily abandoned the *Adams* case prior to fully performing the services required of him, one-third of the case work, he forfeited all rights to compensation.

Pointing out that the contract at issue here is the fee arrangement between Wombles and the PSC, not the contingent fee arrangement between the PSC and the Adams family, Orix takes the position that Wombles is entitled to one-third of any fees generated from the *Adams* case, less the amount due Wadlington for

performing what should have been the remainder of Wombles's one-third.   Finding that Orix's argument does not prevail, the Court finds it unnecessary to detail the methodology employed by Orix in arriving at the fee it suggests Wombles is due.

Striking a balance somewhere between the respective positions of Orix and the PSC is *Baker v. Shapero*, 203 S.W.3d 697 (Ky. 2006). In *Baker,* Wo Sin Chiu hired Richard Shapero to represent him in connection with an automobile accident.   Chiu entered into a contingent fee arrangement with Shapero whereby Chiu agreed that Shapero or his designee would represent Chiu in the litigation, and Shapero would receive forty percent of any recovery.   Shapero and his associate, Carl Fredrick, were permanently discharged by Chiu approximately three months after their representation began.   Chiu then hired Kenneth Baker to represent him.   With Baker as his attorney, Chiu received a settlement of $175,000.   Shapero and Fredrick then filed an attorney's lien against the settlement, claims entitlement to forty percent of the recovery, pursuant to the contingent fee agreement they had with Chiu.   The Kentucky Supreme Court held that "when an attorney employed under a contingent fee contract is discharged without cause before completion of the contract, he or she is entitled to fee recovery on a *quantum meruit* basis only, and not on the terms of the contract."   *Baker*, 203 S.W.3d at 699.

The contract at issue in the instant case is the fee arrangement between the PSC and Wombles, not a contingent fee arrangement between attorney and former client as in *Baker*;

however, given the lacuna of case law on the issue, *Baker* is instructive.  The Court will follow *Baker* and award Wombles a fee recovery on a *quantum meruit* basis.  Wombles's time sheets for the *Adams* litigation, submitted as an attachment to the PSC's Motion for Summary Judgment [Record No. 96, Ex. C] indicate that he expended 24.30 hours on the matter, billing at a rate of $225.00 per hour, for a total of $5,467.50.  The Court finds that an hourly rate of $225.00 is a reasonable rate in this legal community given Wombles's experience and the complexity of the litigation, a proposition which no party has refuted.  Wombles is entitled to $5,467.50 from the PSC, in connection with the *Adams* litigation.

III.  CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

1) That Chad R. Wadlington's Motion for Summary Judgment [Record No. 96] shall be, and the same hereby is, **GRANTED**;

2) That the PSC's Motion for Summary Judgment [Record No. 96] shall be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART,** as discussed above;

3) That Orix's Motion for Summary Judgment [Record No. 95] shall be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**, as discussed above;

4) That Orix's Motion to Enforce Judgment [Record No. 71] shall be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART**, as discussed above.

This the 3rd day of March, 2009.

 **Signed By:**

*James B. Todd*

**United States Magistrate Judge**